COOKS, J.,
dissenting.
| Mason Kinch (Plaintiff), a thirty-four year old Lafayette Parish Deputy Sheriff, was injured while on duty. On October 7, 2010, he sought medical attention at the Emergency Room (ER) of Our Lady of Lourdes Regional Medical Center (Lourdes) in Lafayette, Louisiana. Medical records indicate when he arrived at the ER he had, “nausea/vomiting; chills, fever, N/V[nausea/vomiting], generalized weakness, also injured RT leg last night at work.” This information appears in the “ED Physician Notes” of Dr. Godeau who examined Plaintiff in the ER. Plaintiffs medical records from Lourdes regarding his first visit to the ER also indicate additional symptoms which included CBC (Complete Blood Count) results showing a “high” white blood cell count, “pain in his right leg”, elevated blood pressure, elevated respiratory rate, and a temperature of 100.4°F. After examining .Plaintiff, Dr. Godeau gave orders for: “CBC with differential, CMP [comprehensive metabolic panel], Ua [urinalysis], Dilaudid 1 mg IV1 Zofran 8 mg IV, and 1 liter NS.” Dr. Godeau discharged Plaintiff .with a “diagnosis” of nausea and vomiting, a prescription for Zyrtec 10 mg (a sinus medication) and Phenergan |¾25 mg (for nausea) with instructions to follow up with his regular primary care physician and “return to the ER if worse in any way.” On October 10, 2010, Plaintiff returned to Lourdes’ ER and was admitted to the hospital with cel-lulitis in his right lower extremity. He was placed on IV antibiotics, and scheduled for surgery consult. He then underwent a “fasciotomy, debridment, I & D, and skin grafting” as a result of an infection in his right leg.
The majority finds Plaintiffs expert, Dr. Shannon Stinson (Dr. Stinson), does not present sufficient proof in her affidavit and/or letter attached thereto for Plaintiff to establish there- is any genuine issue of material fact precluding summary judgment. -Defendants objected to the introduction of Dr. Stinson’s unsigned and unverified letter and her subsequent affidavit attesting to the letter’s authenticity and accuracy. .In the letter, the doctor recites her expert opinion' regarding Plaintiffs *907 medical care by Lourdes and Dr. Godeau. The trial court admitted both the letter and affidavit in evidence at the hearing on the motion. Defendants did not challenge that ruling. Nevertheless, the majority states in a footnote that it does not address the question of whether Dr. Stin-son’s affidavit and unsigned, unverified letter are competent summary judgment evidence because it finds, even if considered, Dr. Stinson’s affidavit and report are insufficient to defeat summary judgment in this case. I disagree.
The majority sets forth Plaintiffs burden of proof at a trial on the merits in this malpractice case, i.e., Plaintiff must prove the standard of care; a breach of that standard; and a causal connection between the breach of care and Plaintiffs injury, all by a preponderance of evidence. Relying on this court’s holding in Bianchi v. Kufoy, 10-607 (La.App. 3 Cir. 12/8/10), 53 So.3d 530, the majority further finds Plaintiff “need not prove that the defendant’s conduct was lathe only cause of his harm, but must show that, as a result of the defendant’s negligence, it is more probable than not that he suffered injuries because of the defendant’s conduct.” I agree that these are correct legal precepts applicable at the trial on the merits.
The majority, like many appellate panels, misconstrues Plaintiffs burden of proof on summary judgment.[1] In Willis v. Medders, 00-2507, p. 3 (La.12/8/00), 775 So.2d 1049, 1051 (emphasis added), the supreme court explained this burden of proof in clearer terms than the language used in the code of civil procedure and more clearly pointed out how the non-moving party may meet its burden on summary judgment:
[W]hen the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert’s opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.
That is precisely what Plaintiff did in this case. Defendants did not file any pretrial motion seeking to prevent Dr. Stinson from testifying' as an expert at trial or from rendering' her opinion on the basis that it was based on some flawed methodology or other scientific error. Defendant’s only objection to the doctor’s expert opinion was that it was not submitted in proper form. That objection was cured by the subsequent filing of the affidavit prior to the hearing of the summary judgment motion. For now, the doctor’s report is supported by 524 pages of Plaintiffs .medical records, professional publicar tions, and a detailed account of the doctor’s expertise in emergency room medical care. Her opinion is sufficiently ^grounded to allow a reasonable juror to conclude 1) what was the standard of care in this case; 2) that Defendant breached the standard of care; and 3) Defendant’s breach caused injury to Plaintiff. Defendant offered no countervailing evidence but merely supported its Motion for Summary Judgment on the assertion that because Plaintiff had not disclosed an expert witness in his response to discovery pleadings he would not be able to carry his *908 burden of proof at trial. But this was not the posture of the case by the time the motion was heard. As noted, Plaintiff, by that date, ¡secured an expert whose opinion was accepted as evidence in the record. Defendant could no longer stand mute. Defendant did not attack the expert’s qualifications[2] nor did Defendant present any expert of its own to give an opinion as to. what the standard of care- is in this case other than that articulated by Plaintiffs expert. If the standard of care is as Dr. Stinson correctly set forth, a fact which we must accept as the uncontro-verted truth at this point, then there is no dispute Defendant breached this standard by not prescribing antibiotic to Plaintiff and there is enough evidence to conclude harm was caused to the Plaintiff, albeit a genuine issue still exists as to the “degree or extent of the harm” caused to him as a result of the breach. Arguments in briefs are not evidence and can never satisfy the evidentiary burden of parties on summary judgment. Defendant has the burden, as the mover on summary judgment, to “show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(B)(2). The Code of Civil Procedure further provides: “The burden of proof remains with the movant.” La. Code Civ.P. art. 966(C)(2). The movant must successfully “point out to the court that there is an absence of factual support |¡;for one or more elements essential to the adverse party’s claim, action, or defense.” Id. It is only after the mover succeeds in making this showing that the opposing party must “produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” Id. The majority in this case falls into the same error as did the Fourth Circuit in Willis. In that case, the appellate court “chastised the expert’s affidavit as being ‘very vague’ and containing ‘general statements’ from which it refused to infer the specifics needed to defeat the defendant-manufacturer’s, summary judgment motion.” Willis, 775 So.2d at 1050. As the supreme court explained in Willis, Id. (emphasis added):
The' court of appeal erred in several respects. First, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. See Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 at pp. 16r 17 (La.2/29/00), 755 So.2d 226, 286 (noting the court “must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion”); See also Hebert v. St. Paul Fire and Marine Ins. Co., 99-0338 (La.App. 4th Cir.2/23/00), 757 So.2d 814, cert. denied, 00-0861 (La.5/5/00), 761 So.2d 550. Under that. standard, the lower courts erred in failing to find a genuine issue of material fact created by the inferences reasonably drawn from the expert’s affidavit.
Likewise, in this case, the majority engages in the same flawed rationale and errs in concluding that summary judgment is appropriate. The majority accepts for purposes of its treatment of Plaintiffs evidence on summary judgment that Dr. Stinson is Board Certified in emergency medicine and clinical informatics and accepts her letter report, accompanied by her affidavit, as her expert opinion. Nev *909 ertheless, the majority finds Dr. Stinson’s affidavit contains merely conclusory statements made without stating specific underlying facts to support her conclusions. The majority further finds her report “speculative,” and. based on “improbable inferences.” This, says the majority, is insufficient to defeat | ¿Defendants’ motion for summary judgment. First, I suggest that all experts are retained to make conclusions based on their expertise. Secondly, the record on summary judgment does not support the majority’s conclusions. Dr. Stinson’s opinion is not merely conclu-sory nor is it speculative and it is certainly not based on “improbable inference's.” The medical record introduced at the hearing, and relied on by Dr. Stinson, established Dr. Godeau examinéd Plaintiffs injured leg in the first ER visit and knew Plaintiff had “several objective signs of infection.” As noted by Dr. Stinson in her report, the hospital records show these signs included “tachycardia (heart rate of 117), fever (temperature of 100.4F), ta-chypnea (respiratory rate 24), and leukocy-tosis (WBC 14.2).” Dr. Stinson states: “In many eases, antibiotics would be given either in the Emergency Department or upon discharge for these signs despite, no clear, documented reason for their cause.” The majority finds her use of the phrase “in many cases” to be merely speculative because Dr. Stinson “does not address whether those cases in which antibiotics would not be prescribed apply to the facts of this case.” I take her statement to mean something very different, especially when one considers her entire thought process, ie. that in many cases even without clear, documented reason to suspect an infection, an antibiotic would be prescribed when a patient presents with the symptoms exhibited by Plaintiff. Plaintiff did have clear, documented reasons to treat for an infection. Yet, Dr. Go-deau failed to do so. This, says Dr. Stinson, falls below the standard ;;of care. The standard of care does not mean “all or 100%” of the doctors must .or,do follow; it. It is simply the.“best practice.” It.stands to reason in “some” instances, for whatever reason, doctors may, elect not to follow the. standard generally followed by “many” doctors in the given field. Those who elect not to follow the accepted standard of care have the added burden 17of explaining their decision to deviate from it. So, that in “some” instances, for example, a; doctor may find the use of antibiotics would present a greater danger to the patient’s health or the patient’s history suggest causes, other than an infection, for his elevated white blood cell count and high temperature readings. This was the Defendants’ burden to prove not the Plaintiffs burden to disprove.. Defendant merely asserted his actions did not fall below the standard of care. He offered no expert opinion or other evidence in support of his position..
Further, the majority’s hypertechnical interpretation of Dr. Stinson’s use of the phrase “in many instances” is clear error. It is obvious from reading the whole of the doctor’s report that in her opinion, in this case, that doctor’s failure to prescribe antibiotics deviated from the standard of care practiced in “many cases.” I reiterate the supreme court’s admonition to the appellate courts: “the court must draw [ ] inferences from the undisputed facts which are most favorable to the party opposing the motion [for summary judgment].” Willis, 775 So.2d at 1050 (emphasis added). Moreover, the majority, like the appellate court in Willis (emphasis added):
[errs] in assessing the persuasiveness of plaintiffs expert’s views on summary judgment. See Independent Fire, 755 So.2d at 236 (noting that ‘the court must not attempt to evaluate the persuasiveness of *910 competing scientific studies’ on summary judgment in performing its gate keeping function). The court of appeal’s focus on how the plaintiffs expert could have been ‘more persuasive’ and on what his expert ‘did not say’ was misplaced. Properly viewed, plaintiffs expert stated that the proposed alternative design was being used, and one could reasonably infer from his statement that such alternative was economical, i.e. satisfied the risk-duty analysis.
The majority here engages in the same misplaced focus. As noted, the question here is a simple one: Does the evidence put forth by Plaintiff provide a reasonable basis for finding it is a general practice among physicians in the | «medical community to administer antibiotics to patients with clinical findings such as presented by the Plaintiff, even though the underlying cause of the infection was unknown. If so, Plaintiff certainly presented sufficient evidence for a jury to find Defendant breached the standard by not prescribing antibiotics, and Plaintiff suffered harm. The majority is not free to assess the persuasiveness of the doctor’s opinion or to ferret out what she “did not say.”
The majority also takes issue with Dr. Stinson’s statement that “Dr. Godeau’s failure to prescribe antibiotics ‘certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate,” finding again that Dr. Stinson “offers no objective basis for this opinion, especially given her earlier qualification of the emergency department’s duty to prescribe antibiotics, and she is unable to determine how much that failure caused an increase in Mr. Kinch’s damages.” The majority reasons that “given these ambiguities” it cannot find the report sufficient to defeat summary judgment. The majority reaches this conclusion despite acknowledging that “[wjhen causation is at issue, the medical malpractice plaintiff need not prove that the defendant’s conduct was the only cause of his harm, but must show that, as a result of the defendant’s negligence, it is more probable than not that he suffered injuries because of the defendant’s conduct,” (emphasis added) citing Bianchi v. Kufoy. Plaintiff has presented evidence on summary judgment sufficient to show he will prevail at trial in showing Defendant’s conduct caused him some degree of harm. It is not necessary on summary judgment that Plaintiff show the exact degree of harm. I read Dr. Stinson’s expert opinion to say “it is more likely than not” that the “three-day delay in treatment” caused increased morbidity. That she is unable to say just to “what exact degree or extent” it increased morbidity is of no moment on summary | ^judgment. Again, as the supreme court instructs us, we “must draw those inferences from the undisputed facts which are most favorable to the party opposing” summary judgment. Willis, 775 So.2d at 1050 (emphasis added).
I also disagree with the majority’s finding that Dr. Stinson “offer[ed] no objective basis for this opinion.” At the close of her report Dr. Stinson lists “Information Considered in Formulating the Above Opinion” which she details as:
1. Extensive hospital records totaling 524 pages, specifically including the triage assessment, Dr. Godeau’s documentation, orders, and discharge summary from 10/7/2010 as well as the admission History and Physical (documented on 10/11/10), consultation from Dr. Odinet (consult date 10/11/10). Operative reports from Dr. Odinet (operations performed on 10/11/10 and 10/20/10), and the discharge summary authored on 10/22/2010.
*911 2. A reference for defining SIRS, Sepsis, and Septic Shoek(citation omitted)
3. Duties of an Emergency Medicine Physician (citation omitted)
4. Training and experience as an Emergency Medicine physician.
She also states in her affidavit she relied on (1) her personal knowledge; (2) Kinch’s medical records, and (3) physician references. In her affidavit Dr. Stinson specifically states (emphasis added):
I am the same SHANNON STINSON that prepared a report dated January 21, 2015, styled ‘Re: Jason Kinch v. Our Lady of Lourdes regional Medical Center, Inc. And Dr. Kenneth B. Godeaux.’ I verify that the report represents my opinion on the medical care, or lack thereof, rendered to Mr. Jason Kinch on October 7, 2010 at Our Lady of Lourdes Regional Medical Center, based upon my personal knowledge and education, Mr. Kinch’s medical records, and various physician’s references.
As noted in my report, the care, or lack of care, rendered to Mr. Jason Kinch represented a breach of the standard of care required of an Emergency Medicine physician.
I ml am dual Board-certified in Emergency Medicine and Clinical Informatics.
In her written report, Dr. Stinson refers in detail to the evidence in Kinch’s medical records from his first ER visit at Lourdes upon which she bases her expert opinion that Dr. Godeau’s treatment of Kinch fell below the standard of care. She states “it is more likely than not” that Godeau’s failure to treat with antibiotics resulted in some degree of harm to Plaintiff, to be determined on a full trial of the merits considering all evidence. It is not necessary that she use the magic legal incantation “it is more probable than not” as it seems clear to me that her use of “more likely than not” means the same. The supreme court’s instruction in Willis makes it clear that this is especially so on summary judgment. Further, this matter was not the trial. This summary judgment proceeding should not be used to supplant Plaintiffs right to a full trial on the merits. He needed only to make a showing at this preliminary stage that he has a reasonable shot at presenting enough evidence at trial to satisfy his burden of proof. In my view he succeeded in making this showing and more. This case is not ripe for summary judgment in favor of Defendant. For the reasons as stated I respectfully dissent.

. Stated generically, once Defendant, as the moving party, has met its burden of proof on summary judgment, the Plaintiff as non-moving party must "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” La.CodeCiv.P. art. 966(C)(2). Darryl Samaha v. David J. Rau, M.D. 07-1726 (La.2/26/08), 977 So.2d 880.

. ■ Defendant did not file a motion in limine seeking to exclude Dr. Stinson’s report or testimony.